THE KENT COUNTY RAILROAD COMPANY *v.* WILLIAM WILSON.

Fraud practiced in the inception of a contract renders it void; it is, however, never to be presumed, but must be clearly proved. Actual or positive fraud is any false representation, deceit, device, or artifice resorted to or used with intent and for the purpose of deceiving or misleading another to his injury, and may be proved either directly or inferentially, as any other fact.

The fraud meant or signified by the plea of fraud and covin is not merely legal, but it is moral fraud as well, practiced on the other party with intent to deceive or mislead him in respect to the very transaction and subject of controversy between the parties. It consists in a false representation or concealment of material facts with intent to deceive, although knowledge or information of the matter be not exclusively within the reach of the party misrepresenting or concealing it.

A representation, however, though false, will not vitiate a contract unless it be fraudulent also and operates as an inducement influencing the other party to enter into the contract. And it may be laid down as a rule of universal application and acceptance that a collateral statement made at the time of entering into a written contract, but not embodied in it, to invalidate it on the ground of its being a fraudulent statement, must be shown to have been not only false, but that it was known to be false by the party when he made it, and that the other party was thereby induced to enter into the contract.

An assurance given by the agent of the commissioners of a railroad company to procure subscriptions to the stock, to a subscriber at the time of his subscribing to it that if he would do so, the railroad of the company would be located and constructed by a route specifically designated by him, and on the faith of which he subscribed for one hundred shares of the stock, but which assurance was not embodied in the contract of subscription, was a collateral statement, and if the agent at the time he made it knew it to be untrue, and made it with the fraudulent intent to mislead and deceive the subscriber, it would amount to a fraud which will vitiate and avoid his contract of subscription.

If by the terms of the charter of the company and the contract of subscrip-

tion, and the contract of subscription is in writing under the hand of the subscriber, the stock is to be paid for in such manner and proportion and at such times as shall be determined by the president and directors of the company and in such installments as they shall require, provided that no payment shall be demanded until at least thirty days' public notice shall have been given in at least one newspaper published in the county in which such payment shall be demanded, and the payment of it is so called for, and published in five successive installments, the six years' bar of the statute of limitations will not begin to run against the claim of the company from the date of the contract of subscription, as in the case of a promissory note payable on demand, but from the time when the cause of action accrued, which was not until it became payable according to the calls for the installments and the thirty days' publication of them; and if they had been even so barred, the payment of the first within the six years would have taken the claim for the balance out of the operation of the statute.

THIS was an action of *assumpsit* by The Kent County Railroad Company against William Wilson for the balance remaining unpaid on his subscription to the stock of it amounting to twenty-three hundred and seventy-five dollars. The pleas were *non assumpsit;* the act of limitations; and that the defendant signed the alleged subscription to the stock of the company upon the express assurance given at the time by the agent of the company who took it, that the route of the railroad when located should pass through or near Warwick, in the State of Maryland, and terminate at Middletown, in the State of Delaware, but that it was not so located, etc. And on which issue had been taken as well as on the other pleas.

*Massey,* for the plaintiff: After the case had been called, but before the drawing of the jury was commenced, submitted a motion to the court to strike out this plea. It was immaterial, wholly so, and presented neither in form or substance any issue or question of fraud in the case, for it does not even aver that the alleged representation or assurance given him was falsely, much less fraudulently made. Besides, the subscription to the stock and the promise of the defendant to pay for it is in writing and unconditional, while the plea seeks to qualify and vary it by verbal conditions merely, which is wholly inadmissible in evidence under that or any other plea. But in addition to that it was well settled that no change in the route

of a railroad sanctioned by a majority of the stockholders of the company after a subscription to the stock of it had been made, will absolve or discharge the subscriber from his legal obligation and liability to pay it. *Del. R. R. Co.* v. *Tharp*, 1 *Houst.* 149 ; *Redf. on Railw.*, sec. 5 ; *Pierce on Amer. Railr. Law* 70.

*G. B. Rodney*, for the defendant : The motion to strike out the plea had come at a very late moment. The plaintiff had taken issue upon it, and the case had stood for trial on that and the other issues joined during the whole of the term and until this late period of it ; and the defendant had been here and was still here prepared to try it on that and the other issues. He would, however, ask for leave to withdraw the plea and to enter in lieu of it the general plea of fraud and covin, which the court, with the consent of the other side granted.

The subscription of the defendant was for one hundred shares of the capital stock of the company at twenty-five dollars per share, and it was made or purported upon the stock subscription book to have been made according to the date of it on the 12th day of December, 1865, although according to the proof of the witnesses on that point it was not actually made until the month of July, 1866. The company had been originally incorporated by the legislature of the State of Maryland to construct a railroad through Kent County in that State from the waters of Chesapeake Bay or some point on Chester River to the boundary line of the State of Delaware, and afterward by the legislature of the latter State to extend the construction of it within the limits of the latter so as to connect it with the Delaware Railroad at some point on the line of it not more than four miles from the place called Townsend. The defendant was one of the subscribers who desired to have the road located through Warwick or near it in that county to Middletown on the line of the Delaware Railroad in this State, and the agent of the commissioners of the company who procured his subscription to the stock assured him and others at the time that if they would subscribe to the stock the railroad should be so located and constructed. It was not, however, so located and constructed afterward by the directors of the company, but was located and

constructed from its terminus on Chester River toward War- wick and Middletown to Massey's Cross Roads, in Kent County, Maryland, several miles distant even from Warwick, and from Massey's Cross Roads the Delaware Railroad Company, with the understanding and consent of the plaintiffs, constructed a branch railroad to Townsend, on the Delaware Railroad, so as to con- nect it with that railroad at that place.

The first installment called for on the subscription to the stock, amounting to one hundred and twenty-five dollars, on the defend- ant's subscription, was duly made and advertised, and was paid by him on the 13th day of May, 1867, and the balance of it was duly called for in four subsequent installments made and advertised in like manner; the second to be paid August 15th, 1867; the third, May 20th, 1868; the fourth, September 1st, 1868; and the fifth, on September 1st, 1869, but none of which had been paid by him. By the written terms of the subscriptions they were to be paid respectively in such man- ner and proportions and at such times as should be deter- mined by the president and directors of the said company in pursuance of their act of incorporation. And this action against the defendant was instituted on the 10th day of May, 1873.

*Massey,* for the plaintiffs: Fraud is never to be presumed but must be proved to constitue a defense in any case. But the authority of Mr. Fennimore as the agent of the commissioners to obtain subscriptions to the stock of the company, to give any assurance, or make any declarations as to where the projected railroad would be located and constructed, even if they had been both false and fraudulent, which no one pretends to say, must be proved to bind the company, and yet the utter impossibility that there could have been any such authority given is obvious when we consider and reflect that the whole board of commis- sioners collectively had no power whatever to locate the road or to indicate where the line or route of it was to be; for that was a function afterward to be devolved upon and to be per- formed by the president and directors of the company after it had been fully organized.

*J. A. Rodney*, for the defendant : When the stock subscriber is misled in a material respect at the time of making the subscription, it will not bind him. *Redf. on Railw.* 70; 26 *Penn.* 71; *U. S. Dig.* 634; 17 *Texas* 560.    As to the plea of the statute of limitations, we consider and contend that the subscription of the defendant became due and payable as soon as the company was organized, for the president and directors then had authority at any time to demand it, and as fast as they might choose to call for it, for it has been ruled that a note payable as the payee may require it, is payable on demand, and the statute begins to run against a note payable on demand from its date. 9 *Johns.* 218.

*G. B. Rodney*, for the defendant : This, to say the least of it, was a case of very peculiar and aggravated hardship upon the defendant and several other subscribers then and still residing in this State, like him.    For it was not until after this Maryland company had come into this State and obtained a charter to extend and build their railroad within our limits as expressly indicated and designated in it, and after, too, the explicit assurance had been given them by the authorized agent of the company that it would certainly be located and constructed through or near Warwick to Middletown, in this State, that his and their subscriptions were made to the stock; for without the extension into this State by that route, and built as it has since been far away from it and from their lands and possessions in this State, they have, and never can have, any interest whatever in it; and the failure of the company to do that and to redeem that assurance, attended, as it has been, with such serious consequences to these subscribers, and the total failure of the consideration for the subscription and promise to take and pay for the stock, would justly and lawfully absolve the defendant and every other subscriber like him from any liability now to pay for it.    Such a false and deceptive assurance or misrepresentation as that by an agent, although not fraudulently made by him, will vitiate any subscription for which it constituted the sole inducement in the mind of the other party. *Add. on Contr.* 631 ; 3 *Campb.* 506 ; 4 *Metc.* 151.    In this case the representa-

tion of the agent was not collateral to, but it was inherent in the contract itself, was made before it was entered into, and constituted the sole consideration for the defendant's entering into it. The charter authorized the company to call for and require the subscriptions to be paid as soon as it was organized, and they might have been called for in two installments instead of five, to be paid in one and the same week, on thirty days' notice published as required by it. The subscription was, therefore, payable on demand the moment the company was organized, but in not less than two installments or on less than thirty days' advertised notice as to each, and being so the six years' limitation of the statute cannot properly apply to it, but only that which applies to a debt payable on demand at any time after thirty days' notice given of it.

*Gray*, for the defendant: The cases on this question of fraud are multitudinous, but the principle ruled in all of them may be extracted from a comparatively few leading cases on the subject; and that is that actual fraud which goes to the root and foundation of the contract must be proved in order to vitiate and avoid it. 10 *M & W.* 146 ; 1 *Smith's Ld. Ca.* 238 ; *Benj. on Sales* 389. The charter of the company clothed the commissioners with the power merely to open the books and to take subscriptions to the stock, and every subscriber, as well as Mr. Fennimore, must have known that they had nothing to do with the location of the road, and no power or authority whatever over it. It may have been, and doubtless was, the hope and confident expectation of many of them, and of all who subscribed on that ground, as the defendant did, that it would be located as he represented, but at the same time they must have known that it was but a matter of hope and expectation dependent entirely upon the determination of others who were to come after the commissioners, the president, and directors of the company. As to the plea of the statute, he would simply remark that both by the terms of the charter and of the subscriptions to the stock of the company, no part, no installment, of any one of them could by law become due and payable, or could be sued for until after it had been duly called for and

duly advertised for thirty days, as provided for in the charter, and, of course, the statute of limitations can never begin to run until the cause of action has accrued in any case, and the promise being in writing under the hand of the party to pay when and as it should be so called for and demanded, the limitation of six years applies to this case.

*The Court, Gilpin, C. J., charged the jury:* The subscription of the defendant under his hand for one hundred shares of stock in the company, at the price of twenty-five dollars per share, amounting to two thousand five hundred dollars, in the month of July, 1866, had been proved as alleged by plaintiffs and is not denied, and the payment of the first call upon it, amounting to one hundred and twenty-five dollars, by the defendant, on the 13th day of May, 1867, has also been proved and is not disputed. The suit is for the balance, two thousand three hundred and seventy-five dollars, and was instituted on the 10th day of May, 1873. And this would entitle the plaintiffs to recover it unless the defendant has clearly shown to the satisfaction of the jury by the evidence in the case, either that the contract of subscription to the stock was rendered void and of no effect by reason of false and fraudulent representations and assurances made to him by the agent of the commissioners, Mr. Fennimore, appointed to procure subscriptions to the stock of the company, at the time or immediately before he subscribed to the stock, or that the claim has been barred by lapse or efflux of time since it was made under the statute of limitations.

Now, as to the plea of fraud and covin, I remark in the first place that fraud practiced in the inception of a contract renders it void. That is to say, if the transaction be tainted with fraud it is no contract, and consequently it imposes no obligation on the person entering into it. But I must also remark to you in very emphatic terms that fraud is never to be presumed; on the contrary, it must be clearly proved by the evidence to make it available as a defense. Now, I may say that actual or positive fraud may be defined or described to be any false representation, deceit, device, or artifice resorted to or used by one person with the intent and for the purpose of deceiving and misleading

another person to his injury. This is the best general definition which I can give of what is meant by fraud. It is comprehensive in its terms, and it is true as well in its moral as in its legal aspect. It may be proved either directly or inferentially as any other fact is proved. I have said it must be clearly proved in order to constitute a valid defense, for it must be borne in mind that where the circumstances relied upon as indicating fraud are of a doubtful nature, or are susceptible of an innocent interpretation, or are calculated to raise but a bare suspicion of fraud in regard to the person charged therewith, they will not amount to sufficient evidence to establish the fact.

Fraud as meant and signified by the plea of "fraud and covin," is not merely legal, but is moral fraud as well, practiced on the defendant by the plaintiff or its authorized agent, or by the railroad commissioners in this case or their agent, with the intent to deceive and mislead him in respect to the very transaction in question and which is the subject of controversy between the parties. It means more than a mere false statement ignorantly or erroneously made under a misapprehension and without any intention or design to deceive. It consists in a false representation or concealment of material facts with intent to deceive. Fraud occurs where one party substantially misrepresents a material fact peculiarly within his own knowledge, in consequence of which a delusion is created, or makes a statement which he knows to be untrue, and which is naturally calculated to lull the suspicion of a careful man and induce him to forego inquiry into a matter upon which the other party had knowledge or information, although such information may not be exclusively within his own reach. But a representation, though false, will not vitiate a contract unless it be fraudulent also, and operates as an inducement influencing the party to enter into it. The misrepresentation of a fact, however, known to the party making it to be untrue, amounts to a fraud in law if the representation be naturally calculated or be expressly intended to induce a person to act upon it, so that he may thereby be prejudiced or injured. And it may be laid down as a general rule established and sustained by the highest authority, and of universal application and acceptance in the courts of England, as

well as of this country, that a collateral statement in a case like this made at the time of entering into the contract, but not embodied in it, must, in order to invalidate the contract on the ground of its being a fraudulent statement, be shown not only to have been false but to have been known to be so by the party making it when he made it, and that the other party was thereby induced to enter into the contract. The representation in this case was a collateral statement, not embodied in the contract, but extrinsic to it, and it seems to me that the rule which I have just stated applies with singular significance and force to the case now before this court and upon which you are now called upon to pass and determine by your verdict. *Comfool* v. *Fowke*, 6 *M. & W.* 358 ; *Moens* v. *Hayworth*, 10 *M. & W.* 147; *Stevens* v. *Webb*, 7 *C. & P.* 60 ; *Flinn* v. *Tobin*, *M. & W.* 367; *Exerly* v. *Garrett*, 9 *B. & C.* 928; *Palhill* v. *Walter*, 3 *B. & A.* 114; *Freeman* v. *Baker*, 5 *B. & Ad.* 797; *Heely* v. *Lock*, 8 *C. & P.* 527 ; *Mears & Son* v. *Waples*, 3 *Houst.* 581. The question is whether Mr. Fennimore at the time when he made the statement knew it to be untrue, and made it with the fraudulent intent to mislead and deceive the defendant? If he did, then your verdict should be for the defendant. But if he believed at the time that the statement he made to the defendant was true, or did not know that it was false, and did not make it fraudulently or with the intention or design of misleading or deceiving the defendant, and thus inducing him to enter into the contract of subscription, then your verdict under the plea of fraud and covin should be in favor of the plaintiff.

In regard to the plea of the act of limitations it is proper I should say to you that as the contract is in writing, under the hand of the defendant, the claim is not barred until after the expiration of six years from the time of the accruing of the cause of action. It has been insisted by the learned counsel for the defendant that this contract of subscription is in point of law analogous to, and in effect the same as, a promissory note payable on demand, and that the statute of limitations began to run against the claim from the date of the subscription or the day on which it was made, and if six years had elapsed between that day and the day on which the action was commenced, the

4

plaintiff must fail to recover by reason of the bar of the statute. But the contract of subscription in this case is not like a promissory note payable on demand, for when it was entered into the company was not yet organized and there was no person legally authorized to receive the money. Moreover, by the terms of the charter, the company had no power or authority when organized to require immediate payment of the subscription. The charter prescribes in express terms the form of the contract of subscription; and according to it the subscribers to the stock contracted to pay for it " in such manner and proportion, and at such times, as shall be determined by the president and directors of the company," whilst the eighth section of it prescribes that upon every such subscription there shall be paid to the person or persons appointed to receive the same, such installments as the president and directors of the company shall require, provided that no payment shall be demanded until at least thirty days' public notice shall have been given in at least one newspaper published in the county in which the payments shall be demanded. From all of which it clearly appears that the subscriptions were not to be paid immediately, but were to be paid in partial payments or installments from time to time as they should be called for by the president and directors, and then not until thirty days after the call should have been published, as required by the terms of the charter. We therefore instruct you that the bar of the act of limitations did not begin to run in this case, until after the time when the several installments became payable according to the terms of the published notices which are in evidence before you. And if you are satisfied from the evidence that the several installments were made payable at the several times mentioned in the published notices of the calls in evidence before you, then we say to you that the claim of the plaintiff is not barred by the act of limitations, because this suit was commenced for the recovery of it within six years from the accruing of the cause of action upon it. And, moreover, we say to you that if you are satisfied from the proof in the case that the first installment of one hundred and twenty-five dollars was paid by the defendant on the 13th day of May, 1867, then the payment of that

installment at that time took the case out of the operation of the act of limitations from that time, as an acknowledgment of his subsisting liability to pay the subscription, and that the plaintiff would, therefore, have six years afterward from that date within which to commence its action for the recovery of the balance of the subscription remaining due and unpaid on the subsequent installments according to the published calls in evidence before you, this suit having been brought, as before stated to you, on the 10th day of May, 1873.

The plaintiff had a verdict.